**UNITED STATES of America**

v.

**Norman BEBIK.**

**Crim. Nos. 2509–2511.**

United States District Court
W. D. North Carolina,
Asheville Division.

Aug. 27, 1963.

William Medford, U. S. Atty., Robert J. Robinson, J. O. Israel, Jr., Asst. U. S. Attys., Asheville, N. C., for plaintiff.

T. A. Uzzell, Jr., Asheville, N. C., for defendant.

WARLICK, District Judge.

This action came before the Court as a third motion filed by petitioner under the provisions of 28 U.S.C.A. § 2255, in which he seeks to vacate a sentence of twenty-five (25) years imposed upon him on November 23, 1955.

Petitioner, Norman Bebik, together with his co-defendants Carl Virgil Wacker and Bernard Edward Gosnell, were tried in this Court on November 21–23, 1955, under two bills of indictment, in which the following charges were laid.

1. Criminal No. 2511—3 counts charging violations of the Bank Robbery Statute, 18 U.S.C. § 2113,—in that Petitioner and Carl Virgil Wacker took from the Hot Springs Branch of the Citizen's Bank of Marshall, North Carolina, $19,434, by force and violence and by use of dangerous weapons, pistols, said bank having had its deposits insured by the Federal Deposit Insurance Corporation.

2. In Criminal No. 2509, Petitioner, Wacker, and Gosnell were charged with the conspiracy to violate the provisions of the Bank Robbery Statute, said indictment containing five (5) overt acts, all in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2113.

The offenses were alleged to have taken place between the dates of May 15, 1955 and May 18, 1955.

When the trial came on at the November 1955 term of this court at Asheville, petitioner was represented by I. C. Crawford of the Buncombe County Bar, a lawyer of fine reputation and one whom petitioner employed of his own choosing. The defendant, Gosnell, in No. 2509 entered a plea of guilty. Petitioner and Wacker pleaded not guilty in both cases and were tried by a jury. Wacker was also represented by counsel of his own choosing. The jury returned a verdict of guilty as to both defendants and judgment was consolidated in the cases as to Bebik and Wacker and each was given twenty-five (25) years to serve. Gosnell was sentenced to serve a term of ten years. Incidentally none of the money taken in the robbery was ever recovered, presumably being carried to the State of Ohio where Wacker and Bebik lived and disposed of by them and their associates.

Petitioner and Wacker filed an appeal to the Fourth Circuit Court of Appeals, but failed to perfect the appeal within the time allowed; and, accordingly, the appeal was dismissed. However, the Court of Appeals, before granting the motion to dismiss, and in view of the length of the sentences imposed, undertook an examination of the entire record to determine whether there was any merit in the appeal. The appeal was disposed of by per curiam opinion in Wacker and Bebik v. United States, 231 F.2d 659, wherein the Court, among other things, stated:

"* * * a careful examination of the record satisfies us that there is no merit whatever in the appeal and that the motion to dismiss should be granted."

Thereafter, on July 19, 1961, petitioner filed a motion to vacate sentence before this Court on the ground that the District Judge did not afford him an opportunity to address the Court on the matter of punishment before sentence was imposed. That motion was denied without hearing by this Court on July 24, 1961, and petitioner appealed to the Fourth Circuit Court of Appeals. By an opinion filed May 2, 1962, entitled United States v. Bebik, 302 F.2d 335, the Court of Appeals, through Judge Soper's opinion, affirmed this Court's dismissal of the motion without hearing.

Petitioner filed the motion under consideration on May 15, 1962, alleging in said petition that he was incompetent at the time of trial and sentence, as well as insane at the time of the commission of the crime and that, therefore this Court was without jurisdiction to proceed to judgment. Delay came about in this inquiry through the Court's effort to secure the facts therein. Thereafter, on January 22, 1963, a supplementary motion was filed by petitioner, and his original co-defendant, Carl Virgil Wacker, joined with him in said motion, and sought similar relief under the same motion. The supplementary motion sets

forth the further argument that the Court Reporter failed to transcribe the respective arguments of Government counsel and his counsel to the jury, and that such argument alluded to his mental capacity at that time. A hearing was granted in this matter and on February 28, 1963, the petitioner was returned from the United States Penitentiary at Atlanta, Georgia, and brought before the Court. At that time petitioner advised the Court that he was without counsel and requested that counsel be appointed to represent him. Following this request Thomas A. Uzzell, Jr., formerly United States Attorney of the Western District of North Carolina was appointed to represent the petitioner. Following conferences between petitioner and his attorney, the matter came on for hearing. At the beginning of the hearing the petitioner's attorney stated that the question involved and upon which they would proceed was that, in accordance with the opinion of Judge Soper of the Fourth Circuit Court of Appeals on a prior review of this case, there were "other aggravating circumstances during the trial which would make the petitioner's denial of the right of allocution prejudicial." The pertinent part of Judge Soper's opinion, as quoted by the attorney for the petitioner, is as follows:

"The Court did not consider whether such an error would entitle the prisoner to relief in a proceeding under § 2255 if it were shown that the denial of the right was accompanied by other aggravating circumstances. It merely held that collateral relief is not available when all that is shown is failure to comply with the formal requirements of the rule.

"Since nothing else was shown in the pending case, the decision of the District Court was correct and will be affirmed."

The petitioner was sworn and gave testimony alleging the "other aggravating circumstances" to be:

1. That he was incompetent at the time of trial and sentence as well as insane at the time of the commission of the crime;

2. That Government officials and witnesses were aware of the defendant's abnormal behavior and failed to impart such to the Court;

3. That the United States Attorney in his argument to the jury made certain prejudicial accusations as to the character of the petitioner, and,

4. That the petitioner was faced with completing a sixteen (16) year sentence in the State of Ohio, which should have been brought to the attention of the Court for consideration in passing sentence.

Initially, it must be stated that these matters should have been presented upon appeal from the conviction of November, 1955. However, as a full hearing has been conducted, the following facts are found:

### FINDINGS OF FACTS:

1. Petitioner, having been charged with the crime of bank robbery, was committed to the Buncombe County Jail in default of bond approximately six (6) months prior to the time of his trial. This delay in trial comes about through the fact that only two jury trial terms are held each year and the May 1955 term was in session during the period when the robbery of the banks took place.

In the Western District of North Carolina there are no Federal institutions for the housing of prisoners and all United States prisoners are safely kept in county jails, with whom the Marshal has a contract through the United States Bureau of Prisons. The housing, maintenance and discipline of the Federal prisoners is the responsibility of the officers operating the jail. The United States Marshal does not interfere in this function unless there is some indication that the contract is not being followed. During the period petitioner was in the Buncombe County Jail there were some disciplinary problems under which the jailer had to take action. However, the Court finds that any disciplinary

actions taken were reasonable and that the complaints of petitioner were no more serious than the ordinary complaints of an individual confined in a jail facility and could not be considered abnormal behavior on the part of the petitioner under the then existing conditions.

2. That at no time did it come to the attention of any Government officials or officers that defendant's behavior was abnormal to the extent that he could not distinguish between right and wrong on May 15–18, 1955, the time of the commission of the crime with which he was charged, or that his behavior was abnormal to the extent that he could not understand the nature of the proceedings at the time he was tried and properly assist in his defense.

█ 3. With reference to the allegations that certain prejudicial accusations were made by former United States Attorney, James M. Baley, Jr., in his argument to the jury, it is found that the allegations are totally unsupported and without merit. At the time of Mr. Baley's argument to the jury neither the petitioner's attorney nor his co-defendant's attorney made any objection to the argument. At all times during the trial and at every step the undersigned, presiding as District Judge was present in court. Mr. Baley in his testimony at the hearing denied having stated in his argument to the jury the matters and things alleged by the petitioner. It is therefore found that no prejudicial remarks or statements were made in his summation to the jury, and that the argument made arose entirely on the facts heard in the trial.

With reference to petitioner's testimony at the hearing that prior to sentence he was not given the opportunity to advise the Court of a sixteen (16) year sentence awaiting him in the State of Ohio, it is found from petitioner's testimony at the hearing upon cross-examination that he did admit that during his testimony at the trial in 1955 he had advised the Court that he had a conviction of armed robbery in Ohio and that he still had some sixteen (16) years to

serve. This further appeared in the FBI report and was handed to the Court for examination and testified to by the agent.

Further, the Court finds from his trial testimony, which was introduced in evidence at the hearing as Government's Exhibit 4, at page 381, petitioner testified in substance that in 1945 he was charged with armed robbery and received a sentence of 10 to 25 years for the crime, that he had served 8½ years of this sentence and was placed on parole in January, 1953, and that he was on parole at the time of his trial.

█ 5. With reference to petitioner's mental competency at the time he was tried, the hearing brought forth evidence from individuals who had opportunity to observe petitioner at the time of trial and also expert evidence was brought forth by a Clinical Psychologist, Dr. Laurence L. Bryan, a member of the Psychiatric Board of the Atlanta Penitentiary. The Court finds from this evidence that petitioner was mentally competent at the time of his trial; that he understood the nature of the charges against him; and that he was able to participate in his defense.

Further, the Court finds that between the dates of May 15 and May 18, 1955, the time of the commission of the crime, petitioner knew the difference between right and wrong and knew and understood the consequences of his actions.

These findings as to mental competency are further supported by the report of the Board of Examiners, Atlanta Penitentiary, Government Exhibit No. 2, in which the Board found that subject was not psychotic after a thorough and comprehensive psychiatric study. This report is attached hereto as an appendix to these findings and is incorporated herein by reference, and the findings therein are accepted by the Court the same as if fully set forth herein. During the examination at the Atlanta Penitentiary, Dr. Bryan administered to petitioner what is termed, "The Minnesota Multiphasic Personality Inventory". A graph indicating the results of this in-

**576**

ventory was introduced into evidence at the hearing and marked Government Exhibit No. 3. Dr. Bryan's testimony and the graph itself indicate that the petitioner had striven to give an unjustifiably bad impression of his mental condition, which he did not actually possess. I feel that great credence should be lent to the testimony of Dr. Bryan, a man of extensive education and experience in the field of psychology.

Having fully considered the entire record and the evidence presented at the hearing, and based upon the foregoing findings of fact, the Court makes the following

## CONCLUSIONS OF LAW:

1. That the petitioner, Norman Bebik, during the dates of November 21–23, 1955, while being tried in this Court for the crime of bank robbery and a related conspiracy, was in full possession of his mental faculties, knew and understood the nature of the proceedings, and was fully capable of aiding his attorney in the conduct of his defense.

2. That in all his evidence offered, which has been fully examined by the Court, petitioner has failed to show any "aggravating circumstances" sufficient to warrant this Court in vacating the sentence of twenty-five (25) years imposed upon him on November 23, 1955, and the same shall remain in full force and effect.

3. That the motion to vacate sentence filed herein, together with supplementary motion, is without merit and fails to state a claim upon which this Court can grant relief, and it is therefore denied.

It is to be hoped that this motion will be the last filed by this petitioner. He had a fair trial and on his conviction by a jury was affirmed by the Court of Appeals, and since that time he has filed three separate petitions and through one his co-defendant Wacker has appeared on the scene. Plainly this imposes a terrible burden on the District Court and becomes so time consuming that one is after a fashion, deprived of much ability to give attention to legitimate matters before the court.

4. That a copy of these findings and conclusions be delivered to the Warden, United States Penitentiary, Atlanta, Georgia, to the end that he might deliver same to the petitioner so that he may be advised of the Court's decision.